**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

FRANCISCO VILLAR, on behalf of himself and,
FLSA Collective Plaintiffs and the Class,

        Plaintiff,

      -against-

AHRC HOME CARE SERVICES, INC. and
NYSARC, INC.,

       Defendants.

------------------------------------------------------------x

    18-CV-9174 (OTW)

    **OPINION & ORDER**

    **ONA T. WANG, United States Magistrate Judge:**

    Plaintiff Francisco Villar and Defendants AHRC Home Care Services Inc. and NYSARC, Inc.

ask the court for preliminary approval of the Settlement Agreement (ECF 48) in this wage and

hour class and collective action. (ECF 43). Plaintiff brings Fair Labor Standard Act ("FLSA") and

New York Labor Law ("NYLL") claims. For the reasons set forth below, the preliminary approval

of the Settlement Agreement is **DENIED**.

    I.    **Background**

        **A.  Facts**

    The following facts are taken from the Complaint. (ECF 1).

    Plaintiff was allegedly employed by Defendants as a residential habilitation counselor

from approximately March 10, 2017 to December 3, 2017. Compl. ¶ 23. Plaintiff was paid

hourly at $11/hour and then $13/hour. Compl. ¶ 26. Plaintiff alleged that he regularly worked

over 40 hours a week and was only compensated for the time spent with each client and not

any time spent traveling between clients or the office. Compl. ¶ 24. Plaintiff logged his time

spent with clients on attendance sheets, but Defendants had no policy for tracking Plaintiff's travel time, which is allegedly "compensable under both the FLSA and NYLL." Compl. ¶ 25.

"Based on Plaintiff's observations and conversations with other employees, FLSA Collective Plaintiffs and Class members had similar work schedules and received similar hourly rates." Compl. ¶ 27. Plaintiff alleges that Defendants' overtime violations were willful. Compl. ¶¶ 28-31. Plaintiff brought a FLSA claim and an NYLL violation for failure to pay overtime because travel time was not compensated. Compl. ¶¶ 33-51.

### B. The Settlement Agreement

The Settlement Agreement provides for a total settlement amount of $400,000 which "covers Class Members' awards, a service payment to Plaintiff, attorneys' fees and costs, and costs of settlement administration (estimated to be $50,000)." (ECF 44 at 4). The Class includes approximately 1,500 individuals. The per-person allocations will depend on "(a) the number of weeks in which each Class Member was employed by Defendants from [October 5, 2012 to the Final Effective Date]; to (b) the aggregate number of weeks during which all Class Members were employed by Defendants during the Relevant Period, after weighting those weeks according to the hourly rate or estimated hourly rate that each Class Member was paid in each such week." (ECF 44 at 5). The attorneys' fees requested is $133,333,33. Settlement Agreement § 3.2.

The Settlement Agreement involves (1) a proposed class, under Fed. R. Civ. P. 23, for the resolution of the NYLL claims, and (2) a proposed collective for the resolution of the FLSA claims. Settlement Agreement at 1. Class Members who choose to opt out must opt out via First Class United States Mail with a statement indicating the intention to opt out. Settlement

Agreement § 2.9(A). Any class member who does not submit an opt out statement "will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the settlement in this case, and have any Rule 23 Claims released and dismissed. Class Members who endorse their settlement check(s) and/or have filed a consent to join form to join will the lawsuit will also release their FLSA Claims." *Id.* § 2.9(D).

The method of release depends on the claim. By cashing their checks, claimants release their FLSA claims. *Id.* § 4.1(D). All Settlement Checks will contain on the back a release of claims statement. § 4.1(C). It states:

> **RELEASE OF CLAIMS**:
>
> By endorsing this check, I consent to join the case entitled *Villar v. AHRC Home Care Services, Inc., [ ], et al.*, SDNY 18-cv-9174, and I hereby release all of my claims as described in the Settlement Agreement and Release.

*Id.* § 4.1(C) (emphasis in original). Class Members who do not timely opt out release their NYLL claims. *Id.* §§ 4.1(A)-(B).

### C. Procedural History

Plaintiff filed this action on October 5, 2018. (ECF 1). The District Court (Koeltl, J.) stayed the action pending mediation. (ECF 25). Parties then consented to magistrate judge jurisdiction for all purposes. (ECF 31). On February 14, 2020, Plaintiff filed a motion for preliminary approval of class settlement and filed the fully executed settlement agreement on March 6, 2020. (ECF 43, 48). Plaintiff's memorandum in support of the settlement agreement analyzed the fairness of the Settlement Agreement in accordance with Rule 23, but failed to analyze it in accordance with the FLSA. (ECF 44). On June 3, 2020, I issued an order directing parties to address how the proposed Settlement Agreement complies with *Cheeks v. Freeport Pancake House Inc.*, 796 F.3d

199 (2d Cir. 2015) and specifically addressing the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (4) the possibility of fraud or collusion" and any structural issues such as the opt-in/opt-out process's compliance with the FLSA." (ECF 49). Parties responded on June 19, 2020 (the "Response"), but failed to address all the factors. (ECF 50).

    **II.**    **The Settlement Agreement Does Not Comply with the FLSA**

        **A.  Relevant Law**

Fed. R. Civ. P. 41(a)(1)(A) permits the voluntary dismissal of an action brought in federal court, but subjects that grant of permission to the limitations imposed by "any applicable federal statute." The Second Circuit has held that "in light of the unique policy considerations underlying the FLSA," this statute falls within that exception, and that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. This Court will approve such a settlement if it finds it to be fair and reasonable, employing the five non-exhaustive factors enumerated in *Wolinsky v. Scholastic Inc.*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted).

Courts in this District have declined to approve a preliminary settlement agreement of a FLSA collective and Rule 23 class if the agreement does not comply with the FLSA. *See, e.g.*, *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78 (E.D.N.Y. 2019) (denying motion to certify class for settlement purposes and preliminary approval of class settlement because of structural and legal deficiencies), *reconsidered denied*, (E.D.N.Y. Apr. 12, 2019);[1] *Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15-cv-1347 (CLP), 2018 WL 1633027 (E.D.N.Y. May 30, 2018) (denying motion to certify a settlement class because the agreement did not meet the requirements of *Cheeks*).[2]

### B. Structural Issues

There are structural issues with the settlement procedures that make the Settlement Agreement impossible to approve. I asked parties to address these structural issues in May 2020, which they failed to address in the Response.

First, the FLSA requires that any person choosing to be part of the collective (1) must consent in writing and (2) file his consent on the docket. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a

---

[1] The parties ultimately submitted a revised settlement agreement in accordance with *Cheeks*, which was approved by Judge Bulsara. *See* No. 17-cv-6093 (SJB), ECF 70 (E.D.N.Y. May 6, 2020).

[2] Plaintiff's counsel in *Chen* is the same as Plaintiff's counsel herein.

party and such consent is filed in the court in which such action is action."); *see also Marichal v. Attending Home Care Servs, LLC*, 432 F. Supp. 3d 271, 278 (E.D.N.Y. 2020 ("Certification under [the] FLSA is primary a case management device that, in the first instance, facilitates notice to potential plaintiffs. . . . [E]ach FLSA claimant has the right to be present in court to advance his or her own claim." (citations omitted)).

The Settlement Agreement complies with neither requirement. *First*, the Settlement Agreements provides that check cashing serves as an employee's consent to become part of a collective, which is insufficient written consent. *See* Settlement Agreement § 4.1; *Marichal*, 432 F. Supp. 3d at 279 ("[T]he named plaintiff and his counsel in a collective action cannot settle a case on behalf of an opt-in plaintiff; the affirmative assent of each opt-in plaintiff – as a party to the case – is required."); *Douglas*, 371 F. Supp. 3d at 85 (rejecting FLSA/NYLL proposed settlement for this exact issue). *Second*, the Settlement Agreement has no provision for requiring filing employees' consents on the docket, but improperly allows the check endorsement to serve as consent to joint. *See Douglas*, 371 F. Supp. 3d at 86 (citing *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv-660, 2016 WL 4073336, at *9 (N.D. Cal. Aug. 1, 2016) ("In this case, FLSA putative class members are not properly directed to give their consent in writing and have it filed with the Court in order to join the class. The parties provide no support for their assertion that having class members sign, then cash, checks with purported opt-in language printed on the back complies with the plain-language requirements of § 216(b).")).

Further, the Settlement Agreement has the Court conduct the *Cheeks* review *before* members of the collective have opted in. This conflicts with *Cheeks*, which requires the court to evaluate the fairness of a proposed settlement *after* collective members opt in. *See Douglas*,

371 F. Supp. 3d at 86 (citing cases). This settlement structure is the same as that rejected in *Douglas*, which "has the Court opining on the fairness of a settlement – that is not a class action – of employees who are not before the Court and dismissing their claims with prejudice before they ever appear." *Id.* There, as here, the settlement structure conflicts with the requirements of *Cheeks* and must be rejected. *See id.* ("[T]his framework releases a claimant's FLSA claims without consent and creates the possibility that, should a claimant decline to join the FLSA settlement by failing to cash the check, he or she would neither have the benefit of the settlement nor the ability to bring [a] FLSA action."); *Chen*, 2018 WL 1633027, at *6 (also rejecting proposed settlement agreement for the same reason).

### C. *Cheeks*

Even if the structural issues did not exist, the Court could not approve this settlement because the parties have failed to provide the Court with sufficient information to conduct a fulsome *Cheeks* review. Any revised settlement agreement shall also remedy these errors.

#### 1. *Range of recovery*

Plaintiff alleges a maximum recovery against Defendants to be approximately $5 million. (ECF 55 at 2). The proposed settlement amount is $400,000. Plaintiff "estimates the percentage recovered to be in the range of 32% (based on 30 minutes of unpaid travel time per week, amounting to $1,250,000) to 65% (based on 15 min[utes] of unpaid travel time per week, amounting to $625,000).[3] (ECF 50 at 2). Parties have not specified how much Plaintiff would

---

[3] The assumptions underlying these calculations are: 1) class members traveled every week and 2) highest rates for minimum wage and overtime. (ECF 50 at 2). This calculation, however, appears to take into account the recovery *before* attorneys' fees are deducted.

receive or how much each putative member of the collective would receive.[4] The Settlement

Agreement is also silent as to what happens to the monies in any unendorsed checks. Given this

lack of information, the Court cannot approve the proposed amount.

### 2. *Burden and Risks of Litigation*

Settlement enables the parties to avoid the burden and expense of preparing for trial.

The parties acknowledge that the significant factual disputes present in this case present them

with considerable risks were they to proceed with litigation. (ECF 49 at 3). However, parties

focus on the perceived risks to Plaintiff at trial and in light of the current pandemic. (*See id.*)

Parties have not provided the risk, if any, Defendants face in litigation. (*See id.*). Given the one-

sidedness of the risks, the Court cannot approve the proposed settlement amount.

### 3. *Attorneys' fees*

Plaintiff's counsel requests $133,333.33 for attorneys' fees, but provides no information

for the basis of this request. (ECF 44 at 6). Plaintiff's counsel mistakenly state that the "Court

need not rule on fees and costs now." (*Id.*). Although that may be true for a Rule 23 class

approval, that is not true for a *Cheeks* approval. "Counsel must provide a factual basis for a fee

award, typically with contemporaneous time records." *Guareno v. Vincent Perito, Inc.*, No. 14-

---

[4] When examining the proportion of recovery, courts often look at what a plaintiff would receive rather than the total settlement amount. *See, e.g.*, *Rosario v. Structural Preservation Systems, LLC*, No. 18-CV-83 (HBP), 2019 WL 1383642, at *2 (S.D.N.Y. Mar. 27, 2019); *Rojas v. Bronx Moon LLC*, No. 17-CV-5825 (KMK), 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531 (PAE), 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016); *Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015). Because one of the primary purposes of a *Cheeks* approval is to protect the employee, I concur with this approach.

cv-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 25, 2014); *see also Douglas*, 371 F. Supp. 3d at

84-85. Accordingly, the Court cannot approve the proposed Settlement Agreement.

III.    **Conclusion**

For the reasons set forth above, the proposed settlement is denied without prejudice.

The parties must provide a revised settlement agreement by **October 8, 2020** along with a

revised memorandum of law that address the consistency of the new proposed settlement

consistent with this Order. The Court warns that any settlement agreement that does not

comply with *Cheeks* will be denied.

The Clerk of Court is respectfully directed to close ECF 48.

**SO ORDERED.**

_s/ Ona T. Wang_

Dated: August 20, 2020                                    **Ona T. Wang**
       New York, New York                         United States Magistrate Judge